UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Eric N.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:20cv93 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since December 29, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease ("COPD") with asthma, cervical and lumbar degenerative disc disease, hearing loss, left knee degenerative joint disease and meniscus tear status post-surgery, benign essential tremor, a history of carpal tunnel, bilaterally status post-surgery, obesity, and polyneuropathy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, with no climbing of ladders, ropes or scaffolds.  The claimant can only frequently handle or perform gross manipulation, fingering, or fine manipulation with the bilateral upper extremities, with no use of foot controls with the bilateral lower extremities.  The claimant must work in an environment with only moderate exposure to sound or noise, as the term "moderate" is defined in the *Selected Characteristics of Occupations*, that is, like a business office, department store, grocery store, or fast food restaurant during off hours, with no exposure to extreme heat, extreme cold, humidity, wetness, or vibrations, and no exposure to hazards such as unprotected heights or dangerous machinery, and with only occasional exposure to pulmonary irritants such as dust, odors, gases, and fumes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 22, 1964 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disabiity because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimat has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

>   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
>   11. The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2016, through the date of this decision (20 CFR 404.120(g) and 416.920(g)).

(R. 14-33).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on December 3, 2020. On February, 2021, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on February 25, 2021. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff was born on August 22, 1964. (R. at 297) At the time of his filing date, he was 52 years old. (R. at 297) He completed high school. (R. at 333) He has previously worked as a hoisting machine operator, hand packager, material handler, tractor trailer truck driver, newspaper delivery driver, and pizza cook . (R. at 333).

Plaintiff was seen by Newman Hearing Care and Audiology on March 10, 2016. (R. at 427) Plaintiff was applying for hearing aids at this assessment. (R. at 428) Plaintiff had his first appointment with neurologist, Marc Cohen, M.D. on January 8, 2016. The assessment does not conclude a primary neurologic reason for the Plaintiff's dysphonia (hoarseness). Plaintiff received orders for a chest x-ray, EMG, MRI, miscellaneous lab work, BMP and Primidone. (R. at 448)

A chest  x-ray was completed at Community Hospital Anderson on January 8, 2016. (R. at 441). The test was to check for shortness of breath and cough. The results show that there are degenerative changes of the spine. (R. at 441)

An MRI of the brain was completed on January 11, 2016. (R. at 439). It was normal. Plaintiff was seen again by Central Indiana Neurology on February 4, 2016.(R. at 438) Neurology examined Plaintiff for idiopathic progressive neuropathy. Plaintiff received orders for hemoglobin A1c, T4, TSH, B12, serum protein electrophoresis, and serum immunofixation. (R. at 438) Plaintiff completed a nerve conduction surgery on February 4, 2016. (R. at 450) The results show that there are bilateral moderated median and ulnar neuropathies at the wrists and elbows. There is moderate sensory-motor mixed and length dependent polyneuropathy.

5

Plaintiff was seen by Dr. Thomas Bright for vocal cord dysfunction on February 9th, 2016. (R. at 467). Plaintiff was assessed and provided with education for vocal cord hygiene. (R. at 469) Plaintiff was seen by Dr. Warrick on February 29, 2016.  R. at 482). The disorder of the larynx was described as the bowing of vocal folds. The intervention for vocal fold bowing is an injection in the vocal fold. This procedure would improve vocal quality but worsen the dyspnea (shortness of breath). Plaintiff declined the option. (R. at 483)

Plaintiff was seen on March 15, 2016 by his neurologist, Marc Cohen. (R. at 431) The Plaintiff received an order for Primidone for his essential tremor. (R. at 434)

Plaintiff sought treatment at St. Vincent Mercy Hospital Emergency Department for acute bronchitis with bronchospasm on March 29, 2016. (R. at 770) The hospital completed the following diagnostics: chest x-ray and lateral routine exam. (R. at 670) Plaintiff received the following medication orders: benzonatate, ipratropium albuterol inhalation solution, and zithromax (R. at 671, 672) Plaintiff was treated at St. Vincent Mercy Hospital Emergency Department for a wound check on his right elbow on May 21, 2016. (R. at 690)

Plaintiff presented for psychological consultative examination at the request of the Social Security Administration on May 15, 2016 administered by Indy Behavioral Health LLC. (R. at 459) Plaintiff's DSM-V Diagnosis are listed as sexual abuse perpetrator and major depressive disorder in full remission. (R. at 461). The results concluded that Plaintiff did not present with psychological impairments related to understanding and memory, sustained a concentration and persistence, or social interaction that would impact his ability to obtain or maintain employment. (R. at 461)

Plaintiff presented to St. Vincent Mercy Hospital Emergency Department for chronic right

6

shoulder pain on July 12, 2016. (R. at 704) Plaintiff received an outpatient referral to St. Vincent Mercy Hospital Rehabilitation Services. (R. at 707) Plaintiff had a follow up appointment with Dr. Marc Cohen for his tremor on July 26, 2016. (R. at 966) Plaintiff received orders for Lyrica and bilateral CTS injections. (R. at 968) Plaintiff was diagnosed with idiopathic progressive neuropathy. (R. at 968)

Plaintiff treated at St. Vincent Mercy Hospital Emergency Department for a cough on August 22, 2016. (R. 739) The Plaintiff was diagnosed with acute sinusitis and received orders for the following medications: Allegra D and Augmentin. (R. 740-741)

Plaintiff had an appointment with Dr. Cohen on August 25, 2016. (R. at 963) Plaintiff received bilateral carpal tunnel injections of triamcinolone Kenalog 40mg/ 1mL to each wrist. (R. at 964)

Plaintiff had a follow up appointment with Dr. Thomas Bright on October 25, 2016. The assessment was to redo autotitration and to work with the vendor for a better CPAP mask. (R. at 466)

Plaintiff's primary care doctor, Ronald Duncan, M.D. submitted a letter dated December 23, 2016. The letter states Plaintiff is unable to work. (R. 621)

Plaintiff was treated at St. Vincent Mercy Hospital Emergency Department for a head injury due to a fall on February 6, 2017. (R. at 820) The Plaintiff received a CT of the brain without contrast. (R. at 827) There was no acute intracranial hemorrhage (R. at 867) Plaintiff stated that he felt dizzy when he stood up and fell hitting his head on the corner of a dresser. Plaintiff indicated that it was the result of an increase in Lyrica. (R. at 832) Plaintiff continued to have issues with lightheadedness and returned to the St. Vincent Mercy Hospital Emergency

Department on February 15, 2017. (R. at 838) Doctors prescribed an order for meclizine 25 mg. (R. at 840)

Plaintiff had a follow up appointment with Dr. Marc Cohen on February 24, 2017, due to a fall resulting in an emergency room visit. (R. at 952) The doctor reviewed post-concussion symptoms and educated the Plaintiff on medications. (R. at 956)

Plaintiff had a four- month follow up with Dr. Thomas Bright regarding his vocal cord dysfunction on February 28, 2017. (R. at 898) The assessment noted that it was a significant and ongoing issue. Plaintiff was referred to Dr. Molina for an expedited evaluation. ( R. at 902)

Plaintiff presented for emergency visit on March 5, 2017 at St. Vincent Mercy Hospital Emergency after an incident where bricks fell on him. (R. at 904). Plaintiff had a CT completed which indicated that there are degenerative discogenic changes at T12-L1 and L4-L5. There are moderate bilateral neural foraminal stenosis at the L4-L5. There are bridging osteophytes over the right sacroiliac joint and LT is sacralized. (R. at 914)

Plaintiff had a return visit on March 8, 2017 with Dr. Marc Cohen. (R. at 948) The doctor reviewed recent CTs and treated Plaintiff for lower back pain. Plaintiff received an order for Medrol. (R. at 951)

Plaintiff attended an appointment on March 13, 2017 with Dr. Duncan. (R. at 1077) Dr. Duncan reviewed CT scans and referred Plaintiff to neurosurgery for diagnoses of cervical stenosis of spinal canal and lumbar foraminal stenosis. (R. at 1081)

Plaintiff presented to Dr. Pablo Molina on March 29, 2017. (R. at 1064) Dr, Molina prescribed Montelukast Sodium 10 mg, ordered a home sleep test and CPAP titration. (R. at 1066)

Plaintiff had a psychological examination on April 10, 2017. (R. at 1041) The assessment demonstrated that the Plaintiff's working memory was below average and serial ability was below average. The examiner diagnosed Plaintiff with recurrent major depression and generalized anxiety disorder. (R. at 1044)

Plaintiff was treated by Dr. Cohen on April 12, 2017 regarding test results on his back. (R. at 1195)  Plaintiff received the following orders: epidural steroid injection and Lyrica. (R. at 1199) Plaintiff received a referral to physical therapy by Dr. Duncan on April 11, 2017. (R. at 1102) Plaintiff treated with Dr. Duncan on April 24, 2017 for lower back pain. (R. at 1110) He received orders to continue physical therapy. (R. at 1111)

Plaintiff was treated by Dr. Pablo Molina on April 26, 2017 for obstructive sleep apnea. (R. at 1048) Dr. Molina recommended an increase to the patient's CPAP to a pressure of 18 cm of water, to use a CPAP with flex technology and to continue to use the Quattro air mask. (R. at 1048) Dr. Molina diagnosed mild interstitial lung disease.

Plaintiff had an operative procedure of L4-L5 interlaminar epidural with local, contrast and steroid guided by biplanar fluoroscopy on May 3, 2017. (R. at 1057) This procedure was completed by Dr. Charles Howe. (R. at 1057).  Plaintiff completed his post-epidural follow up with Dr. Jenile Harper-Abell on May 17, 2017 and June 13, 2017. (R. at 1190 and 1186). Plaintiff had a follow up appointment on May 31, 2017 with Dr. Pablo Molina. (R. at 1061) The doctor addressed chronic insomnia. Plaintiff was prescribed Zolpidem Tartrate 10mg. (R. at 1063)

Plaintiff was treated on June 9, 2017 by Dr. Duncan for lower back pain from lumbar foraminal stenosis and cervical stenosis of the spinal canal. (R. at 1116) Plaintiff received orders to follow a trial of Mobic and follow up in one month. (R. at 1121)

Plaintiff received inpatient treatment at the St. Vincent Stress Center from July 3, 2017 to July 7, 2017. (R. at 1132) Plaintiff experienced an increase in auditory hallucinations. Plaintiff stated that the voices were telling him to hurt himself and other people. (R. at 1132) Plaintiff showed signs of depression and thoughts of suicide. Plaintiff's Prozac dose was titrated from 20-40 mg per day. (R. at 1132) Plaintiff was discharged with a diagnosis of major depressive disorder, recurrent episode. (R. at 1136)

Plaintiff was treated by Dr. Charles Howe at JWM Neurology on July 13, 2017 for follow up after right sacroiliac joint injections were not helpful. (R. at 1176) Dr. Howe ordered a right sacroiliac rhizotomy with one month follow up. (R. at 1178)

Plaintiff was treated by Dr. Subrie Abedallhadi on August 16, 2017 for shortness of breath. (R. at 1299, 1315) The Plaintiff received orders for the following tests: echocardiogram and tilt table. (R. at 1312) The echocardiogram and tilt test were both interrupted by severe coughing episode with vomiting and hypotensive episode dropping his blood pressure to 75/55 and raising heart rate to 122 beats per minute. (R. at 1319)

Plaintiff had an appointment with Kia Jones, M.D due to a cough and sore throat on October 3, 2017. (R. at 1234) The Plaintiff was diagnosed with LPRD, a deviated nasal septum, xerostomia, and nasal dryness. Plaintiff received an order for ranitidine. (R. at 1251)

Plaintiff began treating with Nurse Practitioner Jennifer Hite of Elwood Orthopedics in October of 2017 for bilateral knee pain. NP Hite observed antalgic gait and bilateral patellar crepitus. (R. at 1294) A month later, NP Hite indicated Plaintiff had been discharged from physical therapy without any improvement after 6-8 sessions and again observed antalgic gait. (R. at 1293). In December, NP Hite observed positive Steinman and McMurray's tests. (R. at 1292)

10

Plaintiff had a follow up appointment with Dr. Kia Jones on February 7, 2018 regarding GERD. (R. at 1265). The Plaintiff's symptoms did not improve, and he was referred to a gastroenterologist. (R. at 1265) Plaintiff was ordered an upper GI endoscopy which was performed on February 22, 2018. (R. at 1278) The post-op diagnosis showed that there was a tortuous esophagus, a medium amount of food residue in the stomach, and a Hill Grade I gastroesophageal flap valve. (R. 1278)

A February 2018 MRI of the left knee demonstrated thickening of the proximal portion of the patellar tendon consistent with chronic tendinopathy, a small cleave tear of the lateral meniscus and chondromalacia in the medial and patellofemoral compartments. On February 16, 2018, Plaintiff underwent a partial lateral meniscectomy and patellar chondroplasty. (R. at 1290) A bilateral sacroiliac diagnostic injection was performed on June 6, 2018. (R. at 1344) Plaintiff presented for follow up appointment with Dr. Howe on June 21, 2018 and indicated some improvement with injection. (R. at 1329)

Dr. Duncan completed a Physical Residual Functional Capacity Questionnaire dated October 3, 2018. (R. at 1346) The questionnaire states that emotional factors of depression frequently impair Plaintiff's ability to perform simple work tasks. (R. at 1347) The questionnaire indicates that Plaintiff can only stand/walk for two hours and sit for four hours throughout an eight-hour workday. (R. at 1348) The questionnaire indicates that Plaintiff can lift less than 10 pounds occasionally, 10 pounds rarely, and never 20 or more pounds. (R. at 1348) The questionnaire indicates that Plaintiff can occasionally twist, stoop, crouch, and climb stairs. However, he can only climb ladders rarely. (R. at 1349) Dr. Duncan opined that Plaintiff would be absent from work about three days per month. (R. at 1349)

11

Plaintiff was treated at the St. Vincent Mercy Hospital Emergency Department on October 4, 2018 for left shoulder pain resulting in a diagnosis of a contusion of the left shoulder and left shoulder mild degenerative change. (R. at 1352) The Plaintiff had a x-ray of the left shoulder which demonstrated a degenerative change of the acromion and slight degenerative change of the greater tuberosity. (R. at 1358) Doctors prescribed Plaintiff acetaminophen hydrocodone 325 mg - 7.5 mg. (R. 1355)

Plaintiff attended a hearing before an ALJ on November 30th. (R. at 41). Plaintiff testified that he is right-handed, divorced, and lives with a roommate. (R. at 44-45) Plaintiff stated that his mother pays his bills for him. (R. at 45) Plaintiff testified that he received Workmen's Compensation in 2007 and unemployment compensation in 2011. (R. at 45). Plaintiff discussed his work history. (R. at 46-52) Plaintiff testified that he stopped working in 2016 due to a diagnosis of COPD and not being able to walk very far without passing out. (R. at 52) Plaintiff testified that he could walk half a block in about five to ten minutes. (R. at 52). Plaintiff testified that he could walk more than five to ten minutes if he uses a cane, which he has used since 2017. Plaintiff stated that his doctor advised him he should get a cane. (R. at 52) Plaintiff testified that the cane helps him keep his balance when he is feeling lightheaded from being short of breath. (R. at 53) Plaintiff testified that he has fallen four or five times. (R. at 53) Plaintiff testified that he uses a nebulizer and an inhaler to treat his shortness of breath. (R. at 54)

Plaintiff testified that he had a back injury in 2017 due to a fall. (R. at 54) Plaintiff testified that he slipped and fell while moving logs. (R. at 54) He testified that he received epidural shots every 6 months but that it only helped the pain temporarily. (R. at 55) Plaintiff reported lower back and neck pain. (R. at 55).

12

Plaintiff reported that he went to Aspire Indiana Health, a mental health services facility, weekly for one year in 2017. (R. at 55) Plaintiff testified that his mental impairment limits his ability to work due to his depression. (R. at 56)

Plaintiff testified that it takes him an hour to do dishes because he has to sit down every so often due to back pain. (R. at 58) Plaintiff reported that he has to have someone go with him to the grocery store in case he gets lightheaded. (R. at 58) Plaintiff reported that the last time that he did recreational fishing was a year and a half ago. (R. at 59) Plaintiff reported that it has been a year and a half since he has mowed the yard. At that time, it took him an hour to mow. (R. at 59) Plaintiff said that while he couldn't get a job at first because of his arrest record, he no longer believed that was the primary reason that he could not work. (R. at 60) He testified that an additional reason that he cannot work is because of his tremors. (R. at 61) He reported that his hands shake too much to text on a cellphone. (R. at 61)

Plaintiff testified that he has not had problems using his hands since his carpal tunnel release surgeries on his hands and elbows. (R. at 63) Plaintiff reported that the limiting factor for his hands is his tremor. Plaintiff reports that he has a hard time writing and has even broken a dish while washing dishes. Plaintiff reports that the tremor increases with anxiety. (R. at 63) Plaintiff reports that he receives help with chores and cooking from his roommate due to having shortness of breath. (R. at 66) Plaintiff stated that he uses an inhaler, nebulizer, and medication for his breathing issues. (R. at 67)

The VE testified that Plaintiff's past relevant work consisted of medium, semi-skilled work as a hoisting machine operator; medium, unskilled work as a hand packager; heavy, semi-skilled work as a material handler; medium, semi-skilled work as a tractor-trailer truck driver; and

13

medium, skilled work as a pizza cook. (R. at 69)

The ALJ's first hypothetical limited an individual to light work with the following additional limitations:

> no more than occasional stooping, kneeling, crouching, crawling and climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, no exposure to extreme heat, extreme cold, humidity, wetness, vibrations or hazards such as unprotected heights or dangerous machinery, and only occasional exposure to pulmonary irritants such as dust, odors, gases and fumes.

(R. at 70) The VE testified that such an individual could perform work as a pizza cook as Plaintiff performed it, though not as generally performed. The VE testified that they could also perform light, unskilled work as a merchandise marker, a router, or a cashier, with several hundred thousand jobs available. (*Id.*)

For the next hypothetical, the ALJ added to the elements of the first hypothetical a restriction of "no use of foot controls with the bilateral lower extremities" and limited work to "an environment with only moderate exposure to sound or noise." (R. at 70) The VE again testified that such an individual could perform the job of pizza cook as Plaintiff performed it, plus the other jobs previously named. (R. at 71) The ALJ added another limitation: only frequent handling, fingering, or fine manipulation with both hands. This still did not change available work. (*Id.*) Plaintiff's representative then questioned the VE. The VE first explained that employers tolerated no more than 15% of time spent off-task and a variable number of absences of about eight days per year. (R. at 72) Plaintiff's representative asked if the limitation in the first hypothetical for "no exposure to extreme heat" would affect the pizza cook job, but the VE said "extreme heat" referred to working in foundries, not in a kitchen. (*Id.*) The VE agreed that if a cane was needed

14

for both balance and ambulation, an individual could not perform Plaintiff's past work or the other suggested work. (R. at 73) Similarly, a limitation of only occasional handling and fingering would prevent the performance of those jobs. (*Id*.) The ALJ concluded that Plaintiff was unable to perform any past relevant work but could perform other jobs existing in significant numbers in the national economy. (R. at 31-32)

In support of remand, Plaintiff first argues that the ALJ's conclusion that he could perform the exertional requirements of light work is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ committed reversible error in failing to subject potentially decisive and complex medical evidence to a medical expert. Plaintiff argues that Seventh Circuit precedent requires that the ALJ should have re-submitted Plaintiff's case to a medical expert in light of potentially determinative evidence which only came into existence after the state agency consultants had reviewed Plaintiff's case and assessed he could perform light work. The new evidence consisted of a left knee MRI demonstrating thickening of the proximal portion of the patellar tendon consistent with chronic tendinopathy, a small cleave tear of the lateral meniscus and chondromalacia in the medial and patellofemoral compartments followed by meniscal repair and chondroplasty. (R. at 1289) Plaintiff points out that the state agency physicians were unaware of any knee impairments at all when they assessed the record in April and August of 2017. (R. at 156-213)

As the ALJ's Decision notes, Plaintiff did not begin orthopedic treatment for his knees until October of 2017. (R. at 26) Plaintiff argues that such evidence was potentially outcome-determinative because a conclusion Plaintiff could not perform the exertion requirements of light work would have resulted in a favorable decision and approval of benefits when he attained age

15

50. (*See* Appendix 2 to Subpart P of 20 C.F.R. § 404 200(g).) Plaintiff claims that the ALJ unilaterally assessed the level of Plaintiff's knee difficulty, apparently concluding that his surgery alleviated any limitation to Plaintiff's ability to stand and walk for six hours of an eight-hour workday.

Seventh Circuit precedent forbids an ALJ from relying on agency-contracted reviewing opinions which are given without knowledge of significant and complex medical evidence which might alter their prior opinions. In *Goins v. Colvin*, the Seventh Circuit held that an ALJ's "uncritical acceptance" of the state agency physician's conclusions was reversible error because "fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence." 764 F.3d 677, 680 (7th Cir. 2014); citing *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000). Plaintiff argues that an ALJ is not authorized to unilaterally convert complex medical evidence like an MRI into limitations or determine whether a surgery wholly resolved an impairment based on just two follow up visits immediately following surgery without considering a medical expert's opinion on the same. In *McHenry v. Berryhill*, the Seventh Circuit concluded that an ALJ was not entitled to unilaterally translate "without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." 911 F.3d 866, 871 (7th Cir. 2018); citing *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018).

In the present case, rather than subjecting the relevant imaging and objective testing to medical expert scrutiny, the ALJ unilaterally concluded that being informed of the aforementioned evidence would have no effect on the reviewing physicians' previous opinion of Plaintiff's ability to perform light work. Clearly, such a conclusion is an improper medical judgment by the ALJ.

16

*Israel v. Colvin*, 840 F.3d 432 (7th Cir. 2016); citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor").

The Commissioner argues that Plaintiff's knee impairments were "short-lived" and "resolved" and did not last 12 months. However, such an argument misunderstands the Social Security Administration's duration requirement. The Social Security Administration defines its durational requirement as follows: "To meet the duration requirement, you must have a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for at least 12 months in a row." The Commissioner contends that Plaintiff's knee impairment would not have lasted 12 months after surgery because there were no knee complaints during two cardiology appointments and an emergency room visit following an acute injury to Plaintiff's left shoulder. However these records indicate absolutely nothing with regard to whether Plaintiff's knee impairment would limit his ability to stand and/or walk in the months following his surgery. The record shows that Plaintiff's knee MRI demonstrated chronic tendonopathy of the patellar tendon in addition to a torn meniscus. Plaintiff contends that although surgery may have helped or alleviated some symptoms, there remained structural deficiencies in Plaintiff's knee which require the interpretation of a medical expert in concluding whether they would continue to limit a person's ability to stand and or walk for six hours of an eight-hour work day. This Court agrees with Plaintiff that remand is necessary so the ALJ can either adopt the treating physician's opinion with regard to Plaintiff's ability to stand and/or walk, or consider an agency-contracted medical expert's interpretation of Plaintiff's knee imaging in assessing limitations.. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018).

Next, Plaintiff argues that the ALJ's failure to give controlling weight to his primary care doctor, Dr. Ronald Duncan, is reversible error. A treating doctor's opinion must be given controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir.2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir.2010). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Scott*, 647 F.3d at 739; *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306. Even if an ALJ does not give a treating physician's opinion controlling weight, the regulations still require him to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir, 2006); *Scott*, 647 F.3d at 740; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir.2009) (citing 20 C.F.R. § 404.1527(d)(2)).

In the present case, Plaintiff argues that the ALJ failed to provide a logical and accurate reason for dismissing Dr. Duncan's opinion Plaintiff could not perform the standing and walking requirements of light work. Although the ALJ discussed Dr. Duncan's opinion, and concluded that his opinion was inconsistent with the medical evidence, the ALJ did not fully elaborate as required by the Regulations. 20 C.F.R. § 404.1527. As the record supports Plaintiff's argument, this Court finds that remand is warranted on this issue so that an ALJ can analyze Dr. Duncan's opinion as set forth in the pertinent Regulations.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED

AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 4, 2021.

                                                s/ William C. Lee  
                                                William C. Lee, Judge  
                                                United States District Court